**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| PLANNED PARENTHOOD SOUTHWEST OHIO REGION, PLANNED PARENTHOOD OF GREATER OHIO, SHARON LINER, M.D., and WOMEN'S MED GROUP PROFESSIONAL CORPORATION<br><br>            Plaintiffs,<br><br>v.<br><br>DAVID YOST, Attorney General of Ohio; MICHAEL O'MALLEY, Cuyahoga County Prosecutor; RONALD O'BRIEN, Franklin County Prosecutor; JOSEPH DETERS, Hamilton County Prosecutor; and MATHIAS HECK Jr., Montgomery County Prosecutor, each in their official capacities, as well as their employees, agents, and successors,<br><br>          Defendants. | Case No. 1:19-cv-118<br>_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Planned Parenthood Southwest Ohio Region (PPSWO); Planned Parenthood of Greater Ohio (PPGOH); Sharon Liner, M.D.; and Women's Med Group Professional Corporation (WMGPC), by and through their attorneys, hereby allege the following:

**INTRODUCTION**

1.      Plaintiffs bring this action under 42 U.S.C. § 1983 to enjoin and declare unconstitutional Ohio Rev. Code Section 2919.15 ("the Act" or "the D&E Ban"), Ohio's latest attempt at preventing women from exercising their constitutional right to abortion.  The Act is scheduled to take effect on March 22, 2019.

2.      The Act bans the dilation and evacuation abortion procedure (D&E), the safest and most common method of abortion after approximately 15 weeks of pregnancy, and the only

method that is provided in outpatient facilities. Under the Act, physicians who perform D&Es face severe criminal and civil penalties for providing lawful, pre-viability abortion care. A copy of the Act is attached hereto as Exhibit A.

3.      Should the Act be allowed to take effect, Plaintiffs' patients' health and access to abortion care will be threatened, and their constitutional rights will be violated. Specifically, a ban on D&E procedures imposes an undue burden on women seeking abortions after approximately 15 weeks of pregnancy. In addition, to the extent that physicians can continue performing D&E procedures by causing fetal demise prior to evacuation, the D&E Ban violates Plaintiffs' patients' right both to choose abortion and to bodily integrity by requiring them to undergo an additional, unnecessary, and invasive medical procedure that provides no attendant benefit in order to access abortion.

4.      The D&E Ban is plainly contrary to Supreme Court and Sixth Circuit precedent barring restrictions that impose an undue burden on a woman's right to choose an abortion. Indeed, the Sixth Circuit has already specifically considered and invalidated a statute that banned D&Es (*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 337 (6th Cir. 2007)), holding that such a statute imposes an unconstitutional undue burden, and *every* court to recently consider similar laws—including in Alabama, Arkansas, Kansas, Kentucky, and Texas—has blocked them from taking effect.

5.      To safeguard their patients from these constitutional violations and to avoid irreparable harm, Plaintiffs seek declaratory and injunctive relief to prevent against enforcement of Section 2919.15.

## JURISDICTION AND VENUE

6.      The court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4).

7.     Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

8.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and because Defendant Joseph Deters resides in this district.

**PARTIES**

9.     PPSWO is a non-profit corporation organized under the laws of the state of Ohio. PPSWO and its predecessor organizations have provided a broad range of high-quality reproductive health care to patients in Southwest Ohio since 1929.  PPSWO provides medical services to women and men at seven health centers in Southwest Ohio, including: birth control, annual gynecological examinations, cervical pap smears, diagnosis and treatment of vaginal infections, testing and treatment for certain sexually transmitted diseases, HIV testing, and pregnancy testing.  PPSWO's surgery center, located in Cincinnati, provides abortion services through 21 weeks 6 days of pregnancy as measured from the first day of the woman's last menstrual period (LMP), including D&Es.  Physicians who perform abortions at PPSWO are threatened with criminal penalties, civil liability, and resulting potential loss of their medical license, if they violate Section 2919.15.  PPSWO is likewise threatened with criminal liability by the Act.  PPSWO is suing on behalf of itself; its current and future medical staff, officers, and agents; and its patients.

10.     PPGOH is a non-profit corporation organized under the laws of the state of Ohio. PPGOH was formed in 2012 through a merger of several local and regional Planned Parenthood affiliates that had served patients in Ohio for decades.  PPGOH serves patients in northern, eastern, and central Ohio, and provides a range of medical services to women and men at its

nineteen health centers, including birth control, annual gynecological examinations, cervical pap smears, diagnosis and treatment of vaginal infections, testing and treatment for certain sexually transmitted diseases, HIV testing, and pregnancy testing. Two PPGOH health centers, located in East Columbus and Bedford Heights, provide abortion services through 19 weeks 6 days LMP and 18 weeks 6 days of pregnancy LMP, respectively, including D&Es. Physicians who perform abortions at PPGOH are threatened with criminal penalties, civil liability, and resulting potential loss of their medical license, if they violate Section 2919.15. PPGOH is likewise threatened with criminal liability by the Act. PPGOH is suing on behalf of itself; its current and future medical staff, officers, and agents; and its patients.

11.     WMGPC owns and operates Women's Med Center of Dayton (WMCD) at 1401 E. Stroop Road in Kettering, Ohio. WMGPC and its predecessors have been providing abortions to women in the Dayton area since 1975, soon after *Roe v. Wade*, 410 U.S. 113 (1973), was decided. WMCD's physicians provide healthcare services to women, including surgical abortions, pregnancy testing, and birth control. WMCD provides approximately 2,800 abortions per year. WMCD provides abortions to women to 21 weeks 6 days of pregnancy LMP or to 450 grams estimated fetal weight, whichever is less. WMGPC is suing on behalf of itself; its current and future medical staff, officers, and agents; and its patients.

12.     Plaintiff Sharon Liner, M.D., is a physician licensed to practice medicine in Ohio with 15 years of experience in women's healthcare. For the last 12 years, Dr. Liner has served as Director of Surgical Services of PPSWO in Cincinnati, where she supervises physicians practicing in PPSWO's surgical center, develops PPSWO policies and procedures, and provides health care services to women. She has served as Medical Director since October 2018. Dr.

Liner has been performing abortions since 2002, and provides medication abortions up to 10 weeks LMP and surgical abortions, including D&Es, to women through 21 weeks 6 days LMP.

13.     Defendant David Yost is the Attorney General of the State of Ohio.  He is responsible for the enforcement of all laws, including Section 2919.15.  Yost is sued in his official capacity.

14.     Defendant Michael O'Malley is the Cuyahoga County Prosecutor, where PPGOH's Bedford Heights health center is located.  He is responsible for the enforcement of all laws in Cuyahoga County, including Section 2919.15.  O'Malley is sued in his official capacity.

15.     Defendant Ronald O'Brien is the Franklin County Prosecutor, where PPGOH's East Columbus health center is located.  He is responsible for the enforcement of all laws in Franklin County, including Section 2919.15.  O'Brien is sued in his official capacity.

16.     Defendant Joseph Deters is the Hamilton County Prosecutor, where PPSWO's Mt. Auburn surgery center is located in Cincinnati.  He is responsible for the enforcement of all laws in Hamilton County, including Section 2919.15.  Deters is sued in his official capacity.

17.     Defendant Mathias Heck Jr. is the Montgomery County Prosecutor, where WMGPC's Women's Med Center of Dayton is located in Kettering, Ohio.  He is responsible for the enforcement of all laws in Montgomery County, including Section 2919.15.  Heck is sued in his official capacity.

## FACTUAL ALLEGATIONS

## I.     ABORTION CARE IN OHIO

18.     Legal abortion is one of the safest medical procedures in the United States and is markedly safer for women than carrying a pregnancy to term and giving birth.  It is also common; approximately one-quarter of women will have an abortion at some point in their lifetime.

19.     As in the nation as a whole, the vast majority of abortions in Ohio—over 85%—are performed during the first trimester of pregnancy, up to approximately 13 weeks 6 days LMP.[1]  Nevertheless, a significant number of women in Ohio seek abortions between 14 and 21 weeks 6 days LMP.

20.     Women seek abortion throughout pregnancy for a variety of personal and medical reasons, including poverty, youth, and having completed their family.  Women may also need to seek abortion during the second trimester due to delays in suspecting and testing for pregnancy; delays in obtaining funds necessary for the procedure and related expenses (travel, childcare, lost wages); a medical condition requiring hospital referral, and delay in obtaining a referral; as well as difficulties locating and travelling to a provider.  In addition, the identification of most major anatomic or genetic anomalies in the fetus occurs in the second trimester, and women may choose to terminate a pregnancy for that reason.[2]

21.     During the first trimester of pregnancy, there are two types of abortion: medication and surgical.  A medication abortion, which is only available up to 10 weeks LMP in Ohio, involves taking two types of medication (pills) usually one day apart.  Surgical abortions in the first trimester are performed by dilating (opening) the woman's cervix and using suction to remove the uterine contents.

---

[1]     *See* Ohio Dep't of Health, *Induced Abortions in Ohio* (2017).  The typical pregnancy is three trimesters long and lasts approximately 40 weeks.  While there is no hard and fast medical cutoff, the first trimester is typically understood to be the first 13 weeks LMP.  *See* Am. Coll. of Obstetricians & Gynecologists, *How Your Fetus Grows During Pregnancy* (Apr. 2018).  The second trimester spans approximately 14 through 27 weeks LMP, and the third trimester then runs from 28 weeks to delivery, which typically happens around week 40.  *Id.*

[2]     Am. Coll. of Obstetricians & Gynecologists, *Practice Bulletin Number 135: Second Trimester Abortion*, 121 Obstetrics & Gynecology 1394 (2013).

22.     Starting at approximately 15 weeks LMP, suction alone may no longer be sufficient to perform the procedure.  Physicians thus begin using the D&E method, which involves the removal of the fetus and other products of conception from the uterus using instruments, such as forceps, and sometimes suction.  Because the cervical opening is narrower than the fetal parts, some separation of fetal tissues often occurs as the physician withdraws the uterine contents through the cervix.  As a final step, a physician may use suction to ensure that the uterus is completely evacuated.  This process generally takes approximately 10 minutes.  Starting at approximately 15 weeks LMP, D&E is the only abortion method available in an outpatient setting in Ohio.

23.     The only alternative to D&E for women in their second trimester is an inpatient induction abortion procedure, in which physicians use medications to induce labor and delivery of a non-viable fetus.  Induction abortions must be performed in a hospital or similar facility that has the capacity to monitor a patient overnight and are thus not performed in outpatient facilities in Ohio.  Because induction abortions are expensive and involve going through labor, along with all the pain and potential for complications that it entails, very few women choose an induction abortion over D&E.  Induction of labor accounts for only about 5% of second-trimester abortions nationally.

## II.     OHIO'S EXISTING RESTRICTIONS ON ABORTION ACCESS

24.     The D&E Ban is the latest in a long string of attempts by Ohio to place burdensome, medically unnecessary restrictions on women's access to abortion, exacerbating the burdens women already face in accessing care.  For example, under Ohio law, women must make an additional "informed consent" trip to a physician at least 24 hours in advance of their procedure to receive a state-mandated ultrasound and counseling.  Ohio Rev. Code §§ 2317.56, 2919.191, 2919.192.  Ohio also prohibits performing an abortion when the "probable post-

fertilization age" is twenty weeks or greater. *Id.* § 2919.201. Further, Ohio law requires physicians to determine whether there is a detectable fetal heartbeat prior to providing an abortion, and to inform the pregnant woman in writing when a fetal heartbeat is detected. *Id.* §§ 2919.191-192. Clinics performing surgical abortions must be licensed as an ambulatory surgical facility and must secure a written transfer agreement with certain hospitals within 30 miles of their location. *Id.* §§ 3702.30, 3702.303, 3727.60(B)(1). In 2018, Ohio passed a law prohibiting abortion if one reason for a woman's decision to terminate her pregnancy is a fetal indication of Down syndrome. *Id.* § 2919.10.

25.     The D&E ban is Ohio's most recent attempt to restrict access to second-trimester abortions. Ohio law already bans dilation and extraction (D&X) abortion procedures, referred to by opponents of abortion as "partial-birth" abortions. Until the passage of the Act, Ohio's ban on D&X procedures specifically exempted D&E abortions.[3] Ohio Rev. Code § 2919.151. The Act amends Section 2919.151 to include a prohibition on D&E abortions, threatening to turn Ohio's restrictions into an outright elimination of access to second-trimester abortion in Ohio.

26.     Even without the Act taking effect, Ohio's legal restrictions have led to greatly reduced abortion access in Ohio. The number of clinics performing abortions in Ohio has decreased from 18 in 2011 to just 12 by 2014. In the last four years, three of those 12 clinics have closed, leaving just nine that offer abortion services and only six that perform surgical abortions.

27.     This compounds the raft of obstacles Plaintiffs' patients already face in obtaining abortion care. The majority of their patients are low-income, and many struggle to afford the

---

[3]     Indeed, the D&X ban was upheld in part because it exempted D&E abortions. *See Women's Med. Prof'l Corp. v. Taft*, 353 F.3d 436, 451, 453 (6th Cir. 2003).

costs associated with the procedure, including missed work, childcare, transportation to and from the clinic, and hotel stays.

## III.     OHIO'S BAN ON D&E PROCEDURES

28.     The D&E Ban criminalizes the performance of what Ohio calls a "dismemberment abortion." Although it does not use medical terms, the definition in the statute makes clear that it prohibits what medical professionals commonly refer to as D&E. D&E is the safest and most common abortion method starting in the early second trimester, accounting for approximately 95% of second-trimester abortions nationally.

29.     The D&E Ban defines "dismemberment abortion" as follows:

> "Dismemberment abortion" means, with the purpose of causing the death of an unborn child, to dismember a living unborn child and extract the unborn child one piece at a time from the uterus through use of clamps, grasping forceps, tongs, scissors, or similar instruments that, through the convergence of two rigid levers, slice, crush, or grasp a portion of the unborn child's body to cut or rip it off. "Dismemberment abortion" does not include a procedure performed after the death of the unborn child to extract any remaining parts of the unborn child.

Ohio Rev. Code § 2919.15(A).

30.     Violating the D&E Ban constitutes a fourth-degree felony, with potential jail time, significant fines, and/or loss of the physician's medical license. Ohio Rev. Code § 2919.15(C); *see also id.* § 4731.01(B)(10) (commission of an act that constitutes a felony in Ohio may lead to the limitation, revocation, or suspension of physician's license to practice). It also subjects physicians to civil liability. *Id.* § 2307.53(A).

31.     The D&E Ban contains a narrow exception for instances in which a woman's life is in danger or there is a "serious risk [to the woman] of the *substantial* and *irreversible* physical impairment of a major bodily function." Ohio Rev. Code § 2919.15(B) (emphases supplied).

- 9 -

32.     The D&E Ban does not apply in instances where the physician—through a separate, invasive procedure—causes fetal demise prior to starting the evacuation phase of the D&E.  This does not, however, materially narrow the scope of the Ban or lessen its impact.

## IV.     DEMISE PROCEDURES DO NOT SAVE THE ACT

33.     There are three potential demise procedures that could be undertaken prior to a D&E procedure: an injection of digoxin into the fetus or amniotic fluid, an injection of potassium chloride (KCl) into the fetal heart, or umbilical cord transection. However, none of these procedures is consistently safe and reliable at all stages of pregnancy. A minority of physicians use a hypodermic needle to inject a drug called digoxin transabdominally (through the abdomen into the uterus) or transvaginally (through the vaginal wall or the cervix) into the fetus or amniotic sac to attempt to cause fetal demise prior to performing a D&E.  The physicians who use digoxin do so primarily out of fear of prosecution under federal and state laws banning D&X abortions.  *See* Ohio Rev. Code § 2919.151; 18 U.S.C. § 1531.

34.     Injection of digoxin is medically unnecessary and published data show that it provides no medical benefits.  Indeed, according to the American College of Obstetricians and Gynecologists: "No evidence currently supports the use of induced fetal demise to increase the safety of second-trimester medical or surgical abortion."[4]

35.     On the contrary, digoxin carries health risks for the patient. Risks associated with digoxin include extramural delivery (delivery outside a medical facility), infection, and increased risk of hospitalization.  For patients with certain cardiac conditions, like arrhythmia, digoxin may be contraindicated, as digoxin can be life threatening for these patients if it enters the maternal circulation.  In addition, digoxin can be difficult or impossible to administer for some patients,

---

[4]     Am. Coll. Obstetricians & Gynecologists, *Practice Bulletin Number 135: Second-Trimester Abortion* (June 2013).

including those with obesity, fibroids, or cesarean scars from previous deliveries. Some patients may find the procedure painful or stressful as it requires injecting patients with a long needle. For women before 18 weeks LMP, administering digoxin is untested and unproven as a method of demise, as such early usage is virtually unstudied. Injecting women at that stage of pregnancy with digoxin would subject them to an experimental and medically unnecessary procedure.

36. Use of digoxin alone cannot guarantee fetal demise will occur before a D&E is performed. Digoxin takes up to 24 hours to cause fetal demise when it works, but medical literature on the use of digoxin at or after 18 weeks estimates that digoxin fails to cause demise in 5 to 10% of patients. If the D&E Ban goes into effect, a second injection (or other means of demise) would be necessary in these cases. Second digoxin injections are unstudied and are not used in Ohio abortion practice. Patients would already have had their cervix dilated and thus face an increased risk of extramural delivery or infection following a second injection. At the very least, a second injection would prolong the procedure by another day while waiting to ensure the second injection was effective.

37. The D&E Ban's exception to protect the health of the patient does not provide physicians with protection from criminal prosecution if they are faced with a scenario in which digoxin has failed to cause demise, but it is in the patient's best medical interest to complete the procedure. In such cases, it is unlikely that a physician could certify, on pain of criminal penalty, that the patient's condition falls within the Act's extremely narrow health exception, even though it is important to complete the D&E procedure at that point for her health. Ohio Rev. Code § 2919.15(B).

38. An injection of KCl directly into the fetal heart does effectively cause demise, but such an injection is extremely difficult to administer. It requires extensive training typically

provided only to sub-specialists in high-risk obstetrics, known as maternal-fetal medicine (MFM).  Moreover, inadvertent injection of KCl into the woman's bloodstream carries the serious risk of cardiac arrest and fatality.  Abortion providers in outpatient clinics in Ohio do not use KCl for these reasons.

39.  Nor would umbilical cord transection (UCT)—which requires inserting an instrument or suction tube into the uterus, locating and securing the umbilical cord, and then transecting (dividing) it—allow physicians to comply with the statute.  UCT is difficult to perform, particularly in earlier pregnancies when the cord is small and difficult to locate via ultrasound.  In other cases, access to the cord may be blocked by the fetus.  For some physicians who do not have specialized training, UCT may be difficult to perform.

40.  Performing a UCT procedure also adds risks to the D&E procedure.  Physicians must make additional passes of instruments into the woman's uterus to locate and transect the cord, which increases the risk of uterine perforation, cervical injury, heavy bleeding, and infection.  If the physician is able to locate and transect the cord, she must wait for fetal demise to occur, which can take approximately 10 minutes.  UCT therefore would significantly prolong the D&E process, potentially taking as long as the D&E procedure itself.  If a physician is unable to locate the cord and complete transection, it is very unlikely that the D&E Ban's exception to protect the health of the patient would allow the physician to proceed with the D&E.  This is despite the fact that it would be necessary for the safety of the patient to complete the procedure at that point.

41.  Further, while attempting to perform a UCT, physicians may accidentally grab fetal tissue instead of the cord, as the cord and tissue are difficult to distinguish on ultrasound once the amniotic fluid has been drained.  This would constitute a D&E without demise—a

- 12 -

violation of the Act. A physician's intent to cause demise is not an exception to liability under the Act. Thus, with each attempted UCT, Plaintiffs' physicians would risk unintentionally violating the statute.

## V.     UNDUE BURDEN

42.     The Act would unduly burden women's constitutional right to choose an abortion by barring D&E, the safest and most common method of abortion beginning at approximately 15 weeks of pregnancy. The Act's fetal demise requirement does not ease that burden. To the contrary, a requirement that every woman endure a separate, invasive procedure that introduces additional risks before obtaining a lawful, pre-viability abortion itself constitutes a substantial burden, because the additional procedures offer no medical benefit to the patient but carry health risks. And for women for whom possible demise methods are contraindicated, their access to abortion after approximately 15 weeks of pregnancy would disappear.

43.     Moreover, physicians who want to continue providing D&Es would risk violating the Act—and facing prosecution—with every D&E procedure they attempt. The Act provides no safe harbor for physicians who intend to comply with the Act's fetal demise requirement but are unable to do so. It is impossible for a physician to know upon starting a D&E whether demise can be safely achieved before the doctor believes it is necessary to complete the procedure to protect the patient's health (although the patient's condition does not fall within the Act's narrow health exception). In other words, were a demise attempt to fail, Plaintiffs would be put in the impossible position of choosing between facing prosecution or jeopardizing their patients' health. Thus, the D&E Ban may prevent physicians from starting any D&E procedure.

## CLAIMS FOR RELIEF

### COUNT I

### (Due Process—Right to Liberty and Privacy)

44.     The allegations of paragraphs 1 through 43 are incorporated as though fully set forth herein.

45.     Ohio Rev. Code Section 2919.15 violates the right of Plaintiffs' patients to liberty and privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, imposing an undue burden on women seeking to terminate a pregnancy before viability.

### COUNT II

### (Due Process—Right to Bodily Integrity)

46.     The allegations of paragraphs 1 through 43 are incorporated as though fully set forth herein.

47.     Ohio Rev. Code Section 2919.15 violates the right of Plaintiffs' patients to bodily integrity as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution by, inter alia, forcing women to undergo a separate, invasive and painful procedure that introduces health risks in order to obtain a second-trimester abortion, without adequate justification.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

A.     Issue a preliminary injunction and permanent injunction restraining Defendants and their successors in office from enforcing Ohio Rev. Code Section 2919.15.

B.     Issue a judgment declaring that Ohio Rev. Code Section 2919.15 violates the Fourteenth Amendment to the United States Constitution.

C.     Award to Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D.     Award such other and further relief as this Court shall deem just and reasonable.

February 14, 2019                                    Respectfully submitted,

MELISSA COHEN (*pro hac vice pending*)               By /s/ Jennifer Branch
PLANNED PARENTHOOD FEDERATION OF AMERICA              JENNIFER BRANCH (OHIO BAR. NO. 0038893)
123 William Street, Floor 9                           *Trial Attorney for Plaintiffs*
New York, NY 10038                                    GERHARDSTEIN & BRANCH CO. LPA
(212) 541-7800                                        441 Vine Street, Suite 3400
(212) 247-6811 (fax)                                  Cincinnati, OH 42502
                                                     (513) 621-9100
                                                     (513) 345-5543 (fax)
RICHARD MUNIZ (*pro hac vice pending*)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave NW, Suite 300                        *Counsel for Plaintiffs Planned Parenthood*
Washington, DC 20005                                  *Southwest Ohio Region, Planned Parenthood of*
(202) 973-4800                                        *Greater Ohio, Sharon Liner, M.D., Women's Med*
(202) 296-3480 (fax)                                  *Group Professional Corporation*

*Counsel for Plaintiffs Planned Parenthood*           ALAN E. SCHOENFELD (*pro hac vice pending*)
*Southwest Ohio Region, Planned*                      MARGARET ARTZ
*Parenthood of Greater Ohio, Dr. Sharon Liner*        LAURA BAKST
                                                     WILMER CUTLER PICKERING HALE AND DORR LLP
                                                     7 World Trade Center
                                                     250 Greenwich Street
                                                     New York, New York 10007
                                                     (212) 230-8800

                                                     JENNY PELAEZ
                                                     WILMER CUTLER PICKERING HALE AND DORR LLP
                                                     350 South Grand Avenue, Suite 1200
                                                     Los Angeles, CA 90071
                                                     (213) 443-5300

                                                     ALLYSON SLATER
                                                     WILMER CUTLER PICKERING HALE AND DORR LLP
                                                     60 State Street
                                                     Boston, MA 02109
                                                     (617) 526-6000

                                                     SARA SCHAUMBURG
                                                     WILMER CUTLER PICKERING HALE AND DORR LLP
                                                     1875 Pennsylvania Avenue NW
                                                     Washington, DC 20006
                                                     (202) 663-6000

*Counsel for Plaintiffs Planned Parenthood*
*Southwest Ohio Region, Planned Parenthood of*
*Greater Ohio, Sharon Liner, M.D.*