THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION CINCINNATI

PLANNED PARENTHOOD
SOUTHWEST OHIO REGION,
PLANNED PARENTHOOD OF
GREATER OHIO, M.D. SHARON
LINER,  WOMEN'S MED GROUP
PROFESSIONAL CORPORATION,

        Plaintiffs,

  vs.

DAVID YOST, IN THEIR OFFICIAL
CAPACITY AS WELL AS THEIR
EMPLOYEES, AGENTS, AND
SUCCESSORS; MICHAEL O'MALLEY,
IN THEIR OFFICIAL CAPACITY AS
WELL AS THEIR EMPLOYEES,
AGENTS, AND SUCCESSORS;
RONALD O'BRIEN, IN THEIR
OFFICIAL CAPACITY AS WELL AS
THEIR EMPLOYEES, AGENTS, AND
SUCCESSORS; JOSEPH DETERS, IN
THEIR OFFICIAL CAPACITY AS
WELL AS THEIR EMPLOYEES,
AGENTS, AND SUCCESSORS; AND
MATHIAS HECK JR., IN THEIR
OFFICIAL CAPACITY AS WELL AS
THEIR EMPLOYEES, AGENTS, AND
SUCCESSORS,

        Defendants.

Case No.1:19-CV-00118-MRB

Judge Michael R. Barrett

**TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Plaintiffs' February 14, 2019 Motion for a

Preliminary Injunction and/or Temporary Restraining Order and Memorandum of Law in

1

Support. (Doc. 4). The Parties completed expedited briefing on March 16, 2019, which briefing included the declarations and supplemental/rebuttal declarations of numerous medical professionals. The Parties represented that they wished to submit this matter on the briefing alone, although Plaintiffs requested oral argument, which the Court held on March 19, 2019. (Doc. 29). Given the legal and factual complexity of this case, the Court will not entertain the request for a preliminary injunction without an evidentiary hearing. However, the Court recognizes that the statute in question will go into effect on March 22, 2019. Accordingly, the Court will address the Motion (Doc. 4) to the extent that it requests a temporary restraining order.

I.     BACKGROUND

    a. Statute

The Ohio General Assembly recently enacted Ohio Rev. Code § 2919.15 criminalizing, as of March 22, 2019, the performance of an abortion using the dilation and evacuation (D&E) method on a living fetus. Plaintiffs assert a facial challenge to the statute, which states that:

> [n]o person shall knowingly perform or attempt to perform a dismemberment abortion when the dismemberment abortion is not necessary, in reasonable medical judgment, to preserve the life or physical health of the mother as a result of the mother's life or physical health being endangered by a serious risk of the substantial and irreversible physical impairment of a major bodily function.

Ohio Rev. Code § 2919.15(B).  The statute offers the following definition of "dismemberment abortion":

> with the purpose of causing the death of an unborn child, to dismember a *living* unborn child and extract the unborn child one piece at a time from the uterus through use of clamps, grasping forceps, tongs, scissors, or similar instruments that, through the convergence of two rigid levers, slice, crush, or grasp a portion of the unborn child's body to cut or rip it off.

Ohio Rev. Code § 2919.15(A) (emphasis added).

The Parties agree that the statute describes the D&E abortion method, even though it uses the term "dismemberment abortion."  (Doc. 4, PageID 49);(Doc. 25, PageID 253).  The Parties also agree that the statute contemplates that a physician may legally perform a D&E abortion if the physician first causes "fetal demise," (Doc. 4, PageID 43); (Doc. 25, PageID 253), or if such a procedure is necessary, "in reasonable medical judgment [of the physician], to preserve the life or physical health of the mother as a result of the mother's life or physical health being endangered by a serious risk of the substantial and irreversible physical impairment of a major bodily function."  Ohio Rev. Code § 2919.15(B).  In other words, unless the life or physical health of the mother is seriously and irreversibly endangered, the physician must first end the life of the fetus before dismembering and removing it as part of a D&E procedure.

The Parties disagree regarding the constitutionality of the statute.  On the one hand, the State of Ohio represents that legitimate governmental interests justify the statute's pre-abortion fetal demise requirement, "as Ohio seeks to promote respect for

3

life, protect the medical community, and eliminate the possibility for pain for the unborn child." (Doc. 25, PageID 254). On the other hand, Plaintiffs represent that the statute's pre-abortion fetal demise requirement creates an undue burden on a woman's access to an abortion, particularly for women in the 15-18 week LMP[1] gestational range. (Doc. 4, PageID 50).

### b. Fetal Demise

The Parties submitted briefing and declarations focusing on three fetal demise methods: (1) digoxin injections; (2) potassium chloride injections; and (3) umbilical transection. The Parties' proffered experts, for the most part, take diametrically opposed positions regarding the safety, efficacy, nature (experimental v. established), and availability of the three methods, and also disagree on the percentage of women potentially burdened by the fetal demise requirement. Without an evidentiary hearing, the Court is not yet in a position to offer findings of fact on the foregoing issues. Nor is the Court in a position to offer an exhaustive analysis of the Parties' respective positions regarding the three fetal demise methods, given the expedited basis on which the request for temporary restraining order must be decided. However, the Court will highlight some of the concerns raised by Plaintiffs:

---

[1] "LMP" stands for "last missed period."

### 1. Digoxin Injections

According to Plaintiffs, digoxin injections require that the physician use a four-inch spinal needle to pass through the abdomen or cervical wall to inject the drug into the uterus. (Doc. 4, PageID 50-51) (citing Liner Decl. ¶ 15). Plaintiffs assert that failure to cause demise occurs in up to 10% of cases, and other complications arise for some women (*e.g.*, infection, allergic reaction, etc.). (Doc. 4, PageID 51) (citing Keder Decl. ¶ 34). With or without medical complications, however, Plaintiffs assert that "the physician would face an impossible choice" if the first attempt to cause fetal demise via digoxin injection failed: "(1) commit a felony by completing the procedure (without demise) for the sake of the patient's health and safety, (2) put the patient at risk by performing a second, experimental demise attempt, *see id*. ¶ 35 (second injection is not feasible, as no study has established the risks, appropriate dosage, or time to fetal demise for a second digoxin injection), or (3) let the patient's health deteriorate so far as to trigger the [statute's] extremely narrow health exception." (Doc. 28, PageID 547).

### 2. Potassium Chloride Injections

According to Plaintiffs, potassium chloride injections require the skill of a specialist, as a long needle must be passed through a woman's abdomen (avoiding kidneys and other organs) to inject the drug into the fetal heart or thorax. (Doc. 28, PageID 552-53) (citing Ralston Decl.). During the period in which D&E abortions are traditionally performed, fetal size is small and the procedure requires extreme precision, especially to account for patient/fetal movement and potential uterine contractions. (*Id.*)

5

According to Plaintiffs, the nature of potassium chloride renders it dangerous for the woman if a doctor misses the target. (*Id*. at 554). Plaintiffs assert that this procedure is not readily available in abortion clinics, due to its highly specialized nature. (*Id*. at 553).

### 3. Umbilical Transection

Plaintiffs explain that umbilical transection requires the physician to rupture the amniotic membranes; to grasp the fetus' umbilical cord, which is about the size of a string in the 15-18 week range; divide the cord; and then wait approximately 10 minutes for demise. (Doc. 4; PageID 52-53) (citing Keder Decl.). Plaintiffs assert that transection is not a reliable alternative to the injection-based options because, *inter alia*, small fetal size increases the chances that the doctor will accidentally grasp the fetus and dismember it, thereby unintentionally violating the statute. (*Id*. at 53).

Again, Defendants offer the declaration of their own medical professional to dispute many of Plaintiffs' representations about the above-referenced demise procedures.

## II. ANALYSIS

"A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Kessler v. Hrivnak*, No. 3:11-cv-35, 2011 U.S. Dist. LEXIS 57689, at *8-9 (S.D. Ohio May 31, 2011) (quoting *Ohio Right to Life Soc'y Inc. v. Ohio Elections Comm'n*, No. 2:08-cv-492, 2010 U.S. Dist. LEXIS 103401, at *14 (S.D. Ohio Sept. 20, 2010)). In considering a temporary restraining order, the Court balances the following factors: "(1) whether the movant has a strong likelihood of success on the

merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam). "These four considerations are factors to be balanced, not prerequisites that must be met." *Kessler*, 2011 U.S. Dist. LEXIS 57689, *10. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Id*.

    **a. Likelihood of Success**

To establish likelihood of success, it "is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."  *Ne. Ohio Coal. v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012).  Given that the Court is determining likelihood of success on an expedited basis, the Court will not engage in an exhaustive analysis of the constitutional backdrop of this case.  Subject to later reconsideration, the Court will analyze likelihood of success based on whether a "large fraction" of women will be unduly burdened by the statute's fetal demise requirement, as the Parties generally agree that the "large fraction" standard applies.  (Defendants' Opp., Doc. 25, PageID 266) (citing *Cincinnati Woman's Servs. v. Taft*, 468 F.3d 361, 367 (6th Cir. 2006)); (Plaintiffs' Reply, Doc. 28, PageID 559) (citing *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 2829 (1992)).

7

The Parties offer conflicting medical declarations regarding the safety and efficacy of demise procedures at issue, and dispute the percentage of women affected. However, the Court concludes that Plaintiffs have raised issues worthy of more deliberate investigation, which weighs in their favor with respect to likelihood of success. Furthermore, Plaintiffs have directed this Court to multiple opinions from other courts that have recently reviewed statutes similar to Ohio Rev. Code § 2919.15. Currently, the weight of legal authority favors Plaintiffs. *See W. Ala. Women's Ctr. v. Williamson*, 900 F.3d 1310 (11th Cir. 2018); *Whole Woman's Health v. Paxton*, 280 F. Supp. 3d 938 (W.D. Tex. 2017). That said, the Court is mindful of Defendants' arguments questioning whether the foregoing courts applied the correct legal standard. At this point, the Court neither accepts nor rejects the analyses of *Williamson* and *Paxton*, which the Court will study in depth at the preliminary injunction phase. At this early stage, however, Plaintiffs have offered sufficient facts and legal authority to carry their burden on the first factor.

**b. Irreparable Harm/Harm to Others**

The Court will consider the second and third factors together. Plaintiffs argue that "a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). *Accord*: *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of [constitutional] freedoms … unquestionably constitutes irreparable injury."). Here, the Court is not persuaded that Plaintiffs' constitutional rights will be violated, because physicians do not possess a

8

constitutional right to perform abortions. *Planned Parenthood of Greater Ohio v. Hodges*, No. 16-4027, 2019 U.S. App. LEXIS 7200, at *8 (6th Cir. Mar. 12, 2019) (*en banc*). However, physicians generally have standing to assert constitutional challenges on behalf of their patients in the abortion context. *Id.* at *12. Thus, if Plaintiffs establish that the fetal demise requirement creates an undue burden to a "large fraction" of women seeking an abortion in the 15-18 week range, then the second and third factors weigh in favor of Plaintiffs.

### c. Public Interest

"The public interest is promoted by the robust enforcement of constitutional rights," *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 896 (6th Cir. 2012), and it is in the public's interest to uphold those rights if they are being denied "absent medical or other legitimate concerns." *Doe v. Barron*, 92 F. Supp. 2d 694, 697 (S.D. Ohio 1999). Given the factual and legal complexity of this case, the Court is satisfied that the public interest will be served by a narrowly tailored temporary restraining order, so that the Court may preserve the status quo while conducting the appropriate constitutional and factual inquiries.

### III. BOND

The Court waives the bond requirement of Rule 65(c) of the Federal Rules of Civil Procedure. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (district court has discretion to issue preliminary injunction with no bond); *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978) (same).

## IV. CONCLUSION

For the foregoing reasons, the Court declines at this juncture to declare Ohio Rev. Code § 2919.15 unconstitutional; however, Plaintiffs have raised factual and legal issues that warrant further investigation. Accordingly, the Motion (Doc. 4) is **GRANTED IN PART**, to the extent that it seeks a temporary restraining order; the portion of the Motion (Doc. 4) seeking a preliminary injunction is **HELD IN ABEYANCE**.

However, the Court declines to enjoin Defendants from enforcing Ohio Rev. Code § 2919.15 in its entirety. Perhaps anticipating that the Court would require a more fully developed record before issuing wholesale relief, each side has essentially asked this Court, in the alternative, to enter a partial injunction. (Defendants' Opp., Doc. 25, PageID 258) (inviting Court to "craft a remedy"); (Plaintiffs' Reply, Doc. 28, PageID 560) (including alternative request for partial injunction if the Court disinclined to grant wholesale relief to Plaintiffs). Therefore, the Court **ORDERS** as follows: Defendants David Yost, Michael O'Malley, Ronald O'Brien, Joseph Deters, and Mathias Heck, in their respective official capacities, as well as their employees, agents, and successors, and all those acting in active concert with them, are **TEMPORARILY ENJOINED** from prosecuting or otherwise pursuing legal action against medical professionals based on Ohio Rev. Code § 2919.15, in the following circumstances:

> 1. Where a physician performs D&E procedure before 18 weeks LMP;

2. Where, during the course of a D&E procedure, a physician accidentally removes fetal parts when intending to comply with demise requirements;

3. Where a physician performs a D&E procedure after an attempted demise procedure fails;

4. Where a physician performs a D&E procedure without demise after making a medical determination that a given patient is not a candidate for a demise procedure, either because a procedure is contraindicated or medically impossible for that patient.

Based on the text of the statute, it is the Court's understanding that a physician may perform a D&E procedure if such a procedure is necessary, "in reasonable medical judgment [of the physician], to preserve the life or physical health of the mother as a result of the mother's life or physical health being endangered by a serious risk of the substantial and irreversible physical impairment of a major bodily function," Ohio Rev. Code § 2919.15; thus, these circumstances are already covered by the statute and need not be included in the above temporary restraining order. Indeed, no party requested that such language be included in the temporary restraining order.

This Order is effective upon entry, and expires in fourteen (14) days unless dissolved earlier or extended by the Court. Consistent with the above, there is no requirement of a bond.

**IT IS SO ORDERED.**     s/*Michael R. Barrett*
_____
Hon. Michael R. Barrett
United States District Judge